# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 CHANDLER A. MAJSTOROVIC**
**United States Army, Appellant**

ARMY 20180045

United States Army Combined Arms Support Command
Andrew J. Glass, Military Judge
Colonel James D. Levine II, Staff Judge Advocate

For Appellant: Captain Steven J. Dray (argued);[1] Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Major Julie L. Borchers, JA; Captain Steven J. Dray, JA (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Major Julie L. Borchers, JA; Captain Steven J. Dray, JA (on reply brief).

For Appellee: Captain Brian Jones (argued); Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Jeremy Watford, JA; Captain Brian Jones, JA (on brief).

21 June 2019

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

Contrary to appellant's arguments, we conclude he was subject to personal jurisdiction under the Uniform Code of Military Justice at the time of his court-martial.

Before a military judge sitting as a general court-martial, appellant pleaded guilty to one specification of failing to obey a lawful order, one specification of making a false official statement, one specification of willfully damaging military

---

[1] The court heard oral argument on 1 May 2019 at the Rayburn House Office Building as part of the court's outreach program.

property, one specification of wrongful appropriation of military property, and one specification of breaking restriction, in violation of Articles 92, 107, 108, 121, and 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 892, 907, 908, 921, and 934. The convening authority approved the adjudged sentence of a bad-conduct discharge, five months of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. Appellant's case is before us under Article 66, UCMJ.

Appellant contends that the military lost personal jurisdiction over him on 18 August 2017, when—appellant contends—he was honorably discharged from the armed forces. We disagree. We conclude appellant was *not* discharged from the armed forces because the Department of Defense Form 214 [DD 214] appellant received was void at the time it was issued. Appellant also failed to fully out-process his unit, and neither reason nor policy favor the conclusion appellant was discharged. For these reasons, we conclude appellant was subject to jurisdiction under the UCMJ at all relevant times and we affirm appellant's convictions and sentence.

## BACKGROUND

Private E2 Chandler Majstorovic did not like his unit. Specifically, he believed his superiors improperly failed to remove a suspension of favorable personnel actions [flag] from his personnel file. The flag prevented his professional advancement. Some soldiers might seek to remedy such an issue by using their commanding officer's open door policy. Others might file a complaint with the Inspector General's office. Private E2 Majstorovic did neither. Instead, around 8 July 2016, he took a M9 pistol from his unit arms room and threw it into the woods. Though this may seem a curious choice of action, it succeeded in at least one thing; it caused a substantial inconvenience for everyone concerned.

Most of appellant's company spent the better part of a week unsuccessfully searching for the lost weapon. Appellant lied to law enforcement officials who investigated the loss of the weapon by telling them he did not know where it was. Eventually, on 21 September 2016, appellant divulged the location of the M9 and it was recovered. Alas, the weapon was rusted beyond repair, and appellant was assessed a debt for its replacement.

On 14 March 2017, appellant was charged with larceny of the M9, willfully damaging the M9, and making a false official statement to law enforcement agents. Subsequently, it was discovered that appellant was storing pistol ammunition in his barracks room contrary to installation policy. Appellant's commander then ordered him to stay on the installation unless he was escorted by a noncommissioned officer. Appellant violated that order. As a result, on 4 April 2017, appellant was also charged with violating a general order and violating the lawful order of a commissioned officer.

2

As the wheels of justice slowly crept toward appellant's court-martial, appellant's expiration of his term of service [ETS] swiftly approached. Appellant's ETS date was 18 August 2017. Appellant's unit leadership took steps to out-process, i.e. "clear," appellant from the installation "for the purpose of court-martial proceedings." Confusion ensued. At least on the installation-level, appellant's clearing "for the purpose of court-martial proceedings" appears to have been nearly indistinguishable from clearing due to an ETS. Appellant did not, however, clear his battalion or brigade.

Appellant's unit initiated a new flag against appellant on account of his pending court-martial charges. On 24 April 2017, appellant was given a written counseling from his company commander notifying him of the new flag. Appellant's general court-martial convening authority referred the charges to a general court-martial on 30 May 2017. Appellant was served notice of the referral the next day. Appellant was arraigned before the court-martial on 9 June 2017. At the arraignment, the military judge advised appellant of the potential consequences if appellant was absent for his court-martial.

On 31 July 2017, appellant's brigade commander signed a memorandum purporting to extend appellant past his ETS date by six months. While appellant was counseled in writing about the extension by his battalion career counselor, the extension does not appear to have been formally processed, or delivered to anyone outside appellant's brigade. As a result of the failure to process appellant's extension—combined with various other miscues, errors, and bureaucratic inefficiency—appellant received a final accounting of his pay from the finance office, received final clearance from his installation, and was issued a DD 214 purporting to memorialize his honorable discharge from active duty on Friday, 18 August 2017. Appellant's court-martial was scheduled to begin its merits phase the following Monday. Appellant left town and did not appear.

The military judge denied a government motion to court-martial appellant in absentia. Doing so, the military judge made findings of fact and conclusions of law relevant to the issue now before us: On 5 June 2017, appellant received transition orders which stated appellant would be released from active duty on 18 August 2017. Appellant "finished a clearing process" but "did not appear to clear his brigade or battalion." Appellant received his final accounting of pay, and received a DD 214.

Appellant was eventually located and brought back under military control. Appellant moved to dismiss the charges against him for lack of personal jurisdiction. Adopting the findings of fact from his ruling on the motion for trial in absentia, the military judge found appellant's purported discharge was void due to the pending charges and by operation of Army regulations. Accordingly, he denied appellant's motion. Having lost on his jurisdictional challenge, appellant pleaded guilty as described at the beginning of this decision. His case is now before us.

**LAW AND DISCUSSION**

Appellant argues that he was discharged from the Army at 2400 hours on 18 August 2017, after which time, he was no longer subject to court-martial jurisdiction under the UCMJ.  As appellant was not convicted at court-martial until 25 January 2018, appellant contends his convictions must be set aside and the charges dismissed for lack of personal jurisdiction.  We disagree.  Appellant was not eligible to receive a DD 214 on the date of his putative discharge due to the charges pending against him.  Further, appellant failed to complete the battalion-level clearing process. While these deficiencies would not necessarily be fatal to appellant's claim if reason and policy weighed in his favor, they do not.

Appellate courts review issues of personal jurisdiction de novo, accepting a military judge's findings of fact unless they are clearly erroneous or unsupported by the record.  *United States v. Christiansen*, 78 M.J. 1, 4 (C.A.A.F. 2018).

The UCMJ is a legal code of limited application.  An individual is only subject to jurisdiction under the UCMJ if that individual falls into one of several specific categories set out in the code.  The only category under which the government has asserted jurisdiction over appellant is the first: "Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment . . . ."  UCMJ, art. 2(a)(1).

In cases where jurisdiction is asserted under Article 2(a)(1), the military justice system loses personal jurisdiction over a servicemember upon that servicemember's discharge from the military.  *United States v. Hart*, 66 M.J. 273, 275 (C.A.A.F. 2008).  This seems a simple rule, but "the UCMJ does not state when a servicemember's discharge from the armed forces becomes effective for jurisdictional purposes, and thus does not specifically address when a servicemember is no longer subject to being court-martialed."  *Christiansen*, 78 M.J. at 4.

Without controlling law within the UCMJ, our superior court has looked to 10 U.S.C. §§ 1168 and 1169 for guidance on the effective time and date of discharge. *Id.* (citing *Hart*, 66 M.J. at 275).  Our superior court "has identified three criteria to consider when determining whether a servicemember's discharge has been finalized for jurisdictional purposes: (1) the delivery of a [DD 214]; (2) a 'final accounting of pay;' and (3) the completion of the 'clearing' process that is required under service regulations."[2]  *Id.*  (citing *Hart*, 66 M.J. at 276-79).

---

[2] In *Hart*, our superior court based the clearing requirement on language from 10 U.S.C. § 1168, which explicitly applies to separations *before* a servicemember's

(continued . . .)

Even if a servicemember has not satisfied all three of the requirements from *Hart*, he or she may nevertheless be discharged if concluding otherwise would "go against reason or policy." *United States v. Nettles*, 74 M.J. 289, 291 (C.A.A.F. 2015).

Under the law discussed above, the test for whether a service member has been discharged—at least for jurisdictional purposes—can be summarized as follows: If a servicemember has received his DD 214, final accounting of pay, and has completed clearing, that servicemember is discharged. If any of these three requirements is not met, the servicemember is nevertheless considered discharged if reason and policy require a finding of discharge based on the totality of the circumstances. *See Christiansen*, 78 M.J. at n.6.

We conclude appellant has not met two of the three requirements from *Hart*. First, appellant did not receive a valid DD 214. Second, appellant did not complete the required clearing process.[3] Further, reason and policy weigh strongly against finding appellant was discharged for the purposes of personal jurisdiction under the UCMJ. We will discuss each issue in-turn.

### A. *Appellant Did Not Receive a Valid DD 214*

While appellant received a DD 214, we conclude the DD 214 was void under Army Regulation 27-10, Legal Services: Military Justice (11 May 2016) [AR 27-10]. The regulation states, in relevant part:

> After any charge is preferred, the DD Form 458 [Charge Sheet] will automatically act to suspend all favorable personnel actions, including discharge, promotion, and reenlistment. Filing of a DA Form 268 (Report to Suspend Favorable Personnel Action), and other related personnel actions are still required. Failure to file DA Form 268, does not affect the suspension accomplished by the DD Form 458, or give rise to any rights to the Soldier (see AR 600–8–2). After preferral of a charge, regardless of any action purporting to discharge or separate a Soldier,

---

(. . . continued)

term of service expires. Appellant's purported discharge, however, was on account of the expiration of his term of service. Nevertheless, our superior court has not, to date, limited the clearing requirement to early discharges.

[3] It is not in dispute that appellant had received his final accounting of pay at the time of his purported discharge.

> any issuance of a discharge certificate is void until the
> charge is dismissed, the Soldier is acquitted at trial by
> court-martial, or appellate review of a conviction is
> complete.

AR 27-10, para. 5-16b.

Appellant claims the language from AR 27-10 quoted above is not controlling because: "AR 27-10 is not a personnel regulation and it is peculiar to hide a proclamation of such import—purporting to void a facially valid DD Form 214 and involuntarily continue active duty service—within a legal regulation when there is no support for such provisions in any personnel regulation."

While we agree with appellant that paragraph 5-16b is of great import, we disagree that any such import is "hidden" by placing it within a legal regulation. True, Army Regulation 635-200, Personnel Separations: Active Duty Enlisted Administrative Separations (19 Dec. 2016), is the primary regulation dealing with administrative separations, but AR 27-10 is the primary regulation dealing with military justice. The effect of preferring charges under the UCMJ falls under the latter more squarely than the former.

Appellant relies heavily on our superior court's decision in *Smith v. Vanderbush*, 47 M.J. 56, 59-61 (C.A.A.F. 1997) for the proposition that neither preferral, nor referral, nor arraignment on charges under the UCMJ automatically prevents administrative discharge from the Army. *Vanderbush*, however, was decided before the language preventing appellant's discharge was first added to AR 27-10 in 2002. *Compare* Army Regulation 27-10, Legal Services: Military Justice, para. 5-14 (24 June 1996), *and* Army Regulation 27-10, Legal Services: Military Justice, para. 5-14 (20 Aug. 1999), *with* Army Regulation 27-10, Legal Services: Military Justice (6 Sep. 2002), *and* AR 27-10, para. 5-16b. Moreover, in *Vanderbush*, our superior court explicitly anticipated that amending relevant regulations could change the outcome of future cases. *See id.* at 61. Precisely such an amendment informs the outcome of appellant's case.

The initial charges against appellant were preferred on 14 March 2017, and were still pending at the time appellant was issued a DD 214 on 18 August 2017.[4] Therefore, appellant's DD 214 was—under the plain language of AR 27-10 para. 5-16b—void at the time it was issued. For this reason, appellant did not satisfy the first requirement for a valid discharge under *Hart*.

---

[4] Indeed, between preferral of the original charges and the issuance of appellant's DD 214, additional charges were preferred, the charges were referred to a court-martial, and appellant was arraigned at that court-martial.

*B. Appellant Did Not Complete Clearing Under the Relevant Service Regulation*

The third requirement for a valid discharge under *Hart* is "the completion of the 'clearing' process that is required under service regulations." *Christiansen*, 78 M.J. at 4. In appellant's case, the relevant service regulation is Army Regulation 600-8-101, Personnel-General: Personnel Readiness Processing (In-, Out-, Soldier Readiness, and Deployment Cycle) (19 Feb. 2015) [AR 600-8-101].[5]

Under the relevant regulation, out-processing has separate and distinct battalion-level requirements and installation-level requirements. *Compare* AR 600-8-101, para. 3-4,[6] *with* AR 600-8-101, para. 3-5.[7] While appellant appears to have been cleared at the installation level, the military judge found that he did not appear to have cleared either his battalion or brigade. The military judge's finding in this regard is not clearly erroneous as it is supported by both documentary evidence and witness testimony.

Perhaps appellant's failure to clear his battalion was an oversight and perhaps it was intentional—we need not decide which. Appellant's failure to clear his battalion means that he did not complete the clearing process required by the relevant service regulation. In this case the failure is important. Battalion-level offices are those most-likely to be aware of military justice actions pending against the battalion's own soldiers. Had appellant attempted to out-process his battalion—or, for that matter, his brigade—it is entirely likely that his leadership would have prevented his clearing the installation on account of appellant's imminent court-martial.

We do not mean to suggest that every de minimis omission in the clearing process extends court-martial jurisdiction over a soldier indefinitely. Failing to have clearing papers signed by some offices—e.g. a dental clinic—plainly has little to do with jurisdiction under the UCMJ. By contrast, appellant's wholesale failure to complete one of the two forms of out-processing required by the relevant service regulation is not de minimis. For this reason, we conclude appellant did not satisfy the third requirement for a valid discharge under *Hart*.

---

[5] This regulation was superseded by an updated version on 6 March 2018. The version cited above was applicable at the time of appellant's purported discharge.

[6] Titled, "Battalion or unit out-processing requirements."

[7] Titled, "Installation- or community-level out-processing."

*C. Reason and Policy Weigh Against Finding Appellant was Discharged*

Even if a servicemember has not satisfied all three requirements for a valid discharge under *Hart*, he or she may still be discharged if so required by reason and policy. *Christiansen*, 78 M.J. at 4. For example, in *Christiansen*, the accused had not received his final accounting of pay at the time he was taken into military custody approximately four months after he received his DD 214. Nevertheless, our superior court found that, under the totality of the circumstances, he was discharged prior to the preferral of charges against him and his subsequent court-martial. As a result, the military had no jurisdiction over him; he was no longer a servicemember—he was Mr. Christiansen. This case is entirely different.

Mr. Christiansen had every reason to believe he received a valid discharge; appellant did not. Mr. Christiansen was not charged with an offense at the time he received his DD 214. By contrast, appellant had been charged, arraigned, and a trial date was set. Mr. Christiansen completed his clearing process. By contrast, appellant did not complete his battalion clearing process. Mr. Christiansen was administratively separated by his unit and a unit representative told him that he was out of the Army. By contrast, appellant's unit initiated a flag and counseled appellant that he would be staying in the Army for his court-martial. In nearly every way reason and policy cut in favor of finding Mr. Christiansen was discharged, in appellant's case, they cut the opposite. Under the totality of these circumstances, neither reason nor policy favor a conclusion that appellant was discharged prior to his conviction at court-martial.

## CONCLUSION

Appellant was not discharged based on the three requirements of *Hart*, and was not discharged based on reason and policy.

The findings of guilty and the sentence are AFFIRMED.

Judge HAGLER and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court